THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v WARREN KEITH STREETER, Defendant.

Supreme Court, New York County, November 18, 1988

### APPEARANCES OF COUNSEL

*Lawrence Levner* for defendant. *Robert M. Morgenthau, District Attorney (John Brancato* of counsel), for plaintiff.

### OPINION OF THE COURT

ROSE L. RUBIN, J.

Query: Does the subsequent display of a photograph of a valid lineup by the police to a witness who initially failed to identify the defendant at the regularly arranged lineup constitute a per se impermissively suggestive procedure?

## I

Defendant, charged with the crimes of murder in the first

degree (two counts) and robbery in the first degree, moves, pretrial, to suppress his statement made to a law enforcement officer, namely, an officer of the New York City Department of Correction, and to suppress evidence of an identification procedure, each allegedly in violation of his constitutional rights.

The People stipulate that they will not use the challenged statement on their direct case, thus rendering moot the *Huntley* issue.

A *Wade* hearing *(United States v Wade*, 388 US 218 [1967])* was held on August 29, 30 and September 7, 1988. At the hearing, the People called as witnesses Detective Maritza Ortiz, assigned to the 34th Precinct Detective Unit, Detective John Hickey, assigned to the Manhattan North Precinct Homicide Squad, Armand Durastanti, Assistant District Attorney, New York County, and Gerardo Manzano, one of the witnesses who viewed the lineup. The defendant recalled Detective Ortiz as his witness.

Based upon the credible evidence adduced at the hearing, the court denies defendant's motion. It makes the following findings of fact and reaches the following conclusions of law.

On October 18, 1987 Detective Ortiz, an eight-year veteran of the police department, was assigned to investigate the shooting death of James Gossman which allegedly had occurred earlier on that date at 1:50 A.M. at 181 Street and Cabrini Boulevard, in New York County. Pursuant to court order, on November 25, 1987, the detective conducted a lineup at 3:30 P.M. at the 34th Precinct in the office of the Detective Unit. Four people viewed the lineup, Richard Rodriguez, Louis Aaron, Gerardo Manzano and Constantine Lalousis. Five fillers were selected, all male blacks paralleling the defendant in age, weight and height. None of the fillers was a police officer. They came from a men's shelter in the vicinity of the precinct.

Detective Ortiz previewed the fillers, as did defendant's then attorney. Defense counsel expressed satisfaction with the lineup. Thus, there is no challenge to the composition of the lineup. The photograph of the lineup, which was introduced into evidence, shows six black males, all seated, of approximately the same height and color of skin, all with very short hair. Number five in the photograph appears to be of lighter complexion than the others, but this may be the effect of the lighting used during photography. In any event, the lineup is not in any manner suggestive as to the defendant, who chose number two and his position.

Before and during the conduct of the lineup, the defendant, the fillers and the viewing witnesses were kept in separate areas of the precinct to eliminate the possibility of any contact. One at a time, the witnesses viewed the lineup. After each of the witnesses looked at the lineup, Detective Ortiz read the printed questions from the bottom of the lineup sheet, as follows:

"Do you recognize anyone?"

"What number do you recognize?"

"Where do you recognize him from?"

Richard Rodriguez identified number two as the man whom he saw on the corner of 181 Street "the night they killed the guy". Constantine Lalousis responded that he recognized 1 and 6 from the murder. Neither of the other two witnesses made any identification.

Each witness was then taken outside the viewing room, where Detective Hickey was stationed. He watched the witness exit to insure that he did not return to any part of the precinct.

Prior to the lineup, Detective Ortiz had taken four witnesses including Richard Rodriguez and Constantine Lalousis to the Manhattan "catch" unit where each viewed hundreds of photographs. The array contained no photographs of the defendant inasmuch as this was his first arrest and it occurred on the date of the lineup. No misidentifications were made. She also had a police artist make a sketch of the perpetrator, which was replicated many times on 8 by 10 paper. The "poster" contained a description of the perpetrator. It was displayed in the precinct in an area not open to the public.

Thereafter, on December 3, 1987, Assistant District Attorney Durastanti interviewed Gerardo Manzano before he testified in the Grand Jury proceeding. Durastanti informed Manzano he would question him about the lineup Manzano had viewed the previous week on November 25 at the 34th Precinct and he would be asked if he had recognized anyone. Manzano told Durastanti that at the time of the lineup he had responded in the negative. However, with additional time to think about it, he now remembered that he recognized two people in the lineup who could have been the man he saw on the morning of the homicide. Asked "which" by Durastanti, Manzano could not recall the numbers. Durastanti showed him a photograph of the lineup. After looking at the photograph for a long time, Manzano responded that numbers 2

and 5 looked familiar and either could be the man he saw on the morning of the homicide.

It is this showing of the photograph by the Assistant District Attorney to a witness which the defendant seeks to suppress, challenging it as constitutionally impermissive. Asked by Durastanti to explain his inability to identify the man he saw running on October 18, 1987, Manzano responded with candor that the time he had to view the lineup was too short "to make such a big decision." A month later, having spoken to no one, but having reflected upon the question, he told the Assistant District Attorney that he thought two men in the lineup looked similar to the man he saw on the morning of the murder and further that he had sufficient time to view the photograph before selecting the relevant numbers. Manzano had spoken neither to a police officer nor to an Assistant District Attorney in the approximately five-week interval from the date of the crime.

## II

The situation before the court is unrelated to a police-arranged identification procedure. The witness spontaneously volunteered to the Assistant District Attorney that further reflection caused him to realize that two of the men in the lineup looked like the man he saw running. He told the Assistant District Attorney that he had recognized these men at the lineup but failed to so state because he was not, at that time, absolutely certain as to the identification. His failure to inform Detective Ortiz of this fact, or any law enforcement personnel subsequent thereto, does not impact upon the issue. The evidence is clear that he was in no way influenced by the police before, during or after the lineup.

Persuasive in the court's decision is the holding in *People v Frawley* (131 AD2d 504 [2d Dept 1987], *lv denied* 70 NY2d 711 [1987]). In that case, two witnesses failed to select the defendant in separate lineups. Each thereafter informed the police that the defendant was the person they recognized from the incident. One of the witnesses testified that he recognized defendant at the lineup, but did not select him because he was not absolutely certain as to the identification. The court, in *Frawley,* held, as this court does, that the subsequent identification did not render an otherwise unchallenged lineup impermissively suggestive. Nor does the viewing of the photograph to refresh the witness' recollection as to the numbers held by

the two participants he wished to identify render a fair lineup anything different.

Accordingly, defendant's motion is denied. This result conforms with the court's decision rendered on September 8, 1988.